# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY WILDER,** | : | **Civil No.  1:20-CV-492** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has underscored for us the limited scope of our review

when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

> reasonable mind might accept as adequate to support a conclusion."
> Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v.
> Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, Timothy Wilder challenges an Administrative Law Judge's decision denying his application for disability benefits, arguing that this decision is not supported by substantial evidence even though the greater weight of the medical opinion and clinical evidence supported the decision to deny benefits to this disability claimant. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

This is Timothy Wilder's second social security disability application. Wilder was diagnosed with multiple sclerosis (MS) in 2014, and initially applied for Title II disability benefits in April of 2015. (Tr. 74). On June 23, 2017, Wilder's initial application for benefits was denied by an ALJ following a hearing on February 21, 2017. (Tr. 74-82).

Following the denial of this prior application, on August 17, 2017, Wilder applied for disability benefits pursuant to Title II of the Social Security Act, alleging that he had become disabled as of June 24, 2017, the day after the denial of his first disability application due to this MS diagnosis. (Tr. 16-17, 88). Wilder was approximately 31 years old at the time of the alleged onset of his disability, making him a "younger" individual whose age would generally not affect his ability to adjust to other work (Tr. 87). 20 C.F.R. § 416.963 (c). Wilder was a college graduate and previously had been employed as a bookkeeper, corporate assistant and a book cataloguer. (Tr. 173). At the time of his disability application and hearing, Wilder was employed part-time at his church. (Tr. 62).

With respect to his primary medical complaint and alleged impairment— multiple sclerosis—the administrative and clinical record was notable in several respects. First, while the medical record prior to the alleged date of onset of Wilder's disability in June of 2017 confirmed a diagnosis of MS in 2014, these treatment records also generally indicated that Wilder's condition had remained stable since that time. Thus, in January of 2016 it was reported that Wilder's condition was stable, he experienced no flare-ups, and enjoyed a good exercise capacity. (Tr. 381). Two months later, in March of 2016, Wilder reported that his condition was improved and he was described as "much improved clinically." (Tr. 385). Treatment notes from November of 2016 and January of 2017 continued to document

3

improvement in Wilder's condition and reflected relatively benign clinical findings. (Tr. 397, 398, 407).

In addition, the clinical record relating to Wilder's condition after the alleged date of the onset of his disability in June of 2017 confirmed that Wilder's medical condition was, for the most part, stable. For example, in the  summer and fall of 2017, Wilder attended periodic counseling to address his anxiety and some interpersonal tensions within his household. (Tr. 362-69). While his affect was described as blunted or mildly distressed, Wilder displayed fair insight during these sessions. (Id.)

In August of 2017, Wilder's family physician conducted a depression assessment for Wilder that disclosed minimal symptoms. (Tr. 320). Wilder's condition was described as stable with no flare-ups, but the doctor noted that Wilder was experiencing mid-day fatigue, and Wilder voiced frustration in his efforts to obtain disability benefits. (Tr. 320-21).  October 2017 examinations revealed no appreciable change in Wilder's MRI results since October of 2016 and revealed only mild to moderate lesion burdens. (Tr. 419). Wilder appeared to ambulate normally, was alert and oriented, and his coordination and sensation appeared to be intact. (Tr. 418).

Likewise, during an August 2018 comprehensive physical examination, Wilder was cooperative, displayed no distress, denied any pain, and received dietary

counseling, as he was somewhat obese with a weight of 196 pounds on his 5 foot 7 ½ inch frame. (Tr. 445-46). A November 2018 MRI revealed no cumulative increase in Wilder's lesion burden, (Doc. 510), and his physical examination at this time revealed that Wilder was alert and oriented. (Tr. 514). He ambulated with a normal step, did not require an assistive device, and denied feeling unsteady or suffering from generalized weakness of dizziness. (Id.)

Given this clinical evidence, four medical sources have assessed Wilder's present ability to perform sustained work. Three of these medical sources have found that Wilder is not disabled and is capable of working. For example, on November 7, 2017, Dr. Michael Brown, a state agency expert, concluded based upon a review of Wilder's medical records that Wilder retained the ability to perform light work and was not disabled. (Tr. 87-99). Likewise, in October of 2017, Dr. William Wolfe and Dr. Jennifer Richards conducted neurological and mental status examinations of Wilder. (Tr. 331-51).  These examinations also revealed that Wilder retained the ability to perform light or sedentary work, provided that he was not required to routinely carry out complex instructions. (Id.) Arrayed against this broad medical consensus, which found that Wilder was able to engage in work, was a single medical opinion from a treating source, Heather Conner-Mertz, who opined that Wilder's condition would lead to a degree of absenteeism that would render him unemployable. (Tr. 423-28).

It is against this backdrop that a hearing was held on this disability application on January 10, 2019, where Wilder appeared and testified along with a Vocational Expert. (Tr. 46-70). During this hearing, Wilder described his physical capabilities, stating that he could attend to his own personal care, cook, shop, clean, drive, carry up to thirty pounds, bend, stoop, climb stairs, walk and stand for brief periods of time, and sit for extended periods. (Tr. 51-54). Wilder acknowledged similar physical capabilities in an adult function report that he had completed in October of 2017. (Tr. 205-210).

Following this hearing, on February 25, 2019, the ALJ issued a decision denying this application for benefits, finding that Wilder remained capable of performing a range of light and sedentary jobs in the national economy. (Tr. 12-23). In that decision, the ALJ first concluded that Wilder had not engaged in any substantial gainful activity since the alleged onset date of June 24, 2017. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Wilder's obesity and multiple sclerosis were severe impairments. (Id.) At Step 3, the ALJ determined that these impairments did not meet or medically equal the severity of one of the listed impairments. (Tr. 17-18).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), which considered all of Wilder's limitations from his impairments and found that he could perform a range of light or sedentary work with some

restrictions. (Tr. 18-23). In making this RFC determination, the ALJ considered all of the medical and opinion evidence in this case, as well as Wilder's self-reported activities of daily living. (Id.) This analysis noted that Wilder's treatment records indicated that his MS was stable and he had reported some improvement in his overall condition during the course of his treatment for this disease. (Tr. 19-20). The ALJ further observed that Wilder's self-reported activities of daily living indicated that he was capable of performing light exertional labor. (Tr. 20). As for the medical opinion evidence, the ALJ found that the opinions expressed by Drs. Brown, Richards, and Wolfe, all of whom concluded that Wilder retained the capacity to perform some work, possessed greater persuasiveness and were more consistent with the clinical evidence than the outlier opinion of Ms. Conner-Mertz. (Tr. 21-22).

The ALJ's analysis also took into account Wilder's reported obesity. Initially at Step 3 of this analysis the ALJ found that Wilder's obesity did not increase the severity of his coexisting impairments to a degree that would have satisfied a listing requirement. (Tr. 18). The ALJ then addressed Wilder's obesity in the RFC analysis, noting that his BMI had remained consistent at 30-31 throughout the relevant time period, and observing that he had not required any particular treatment for this condition. (Tr. 20).

Having arrived at this RFC assessment, the ALJ found at Step 4 of this sequential analysis that Wilder could perform his past work as a bookkeeper, clerk,

or cataloguer. (Tr. 22). Based upon these findings, the ALJ held Wilder did not meet the stringent standard for disability set by the Social Security Act and denied this disability claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Wilder contends that the ALJ erred in failing to give greater weight to the opinion of the treating physician assistant, Ms. Conner-Mertz; in failing to fully consider and address Wilder's severe impairments, obesity and MS; and in failing to adequately acknowledge a number of non-severe impairments including depression, anxiety, vertigo, and nerve pain. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

     The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." Ibid.; see,
> e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2014)). Thus, we are enjoined to refrain from trying to re-weigh the evidence.

Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.    Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.   42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).   To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.   42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").   20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).   In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts

in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence.

See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.    Legal Benchmarks for Assessing a Claimant's Obesity

The interplay between this deferential substantive standard of review, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is aptly illustrated by those cases which consider analysis of the compounding effect of obesity upon disability claimants. In this regard, the leading case addressing this issue is Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009). In Diaz, the ALJ found at Step 2 of the analytical process that Diaz's obesity was a severe impairment, but then neglected to address the exacerbating effect of this condition at Step 3 or in any other subsequent steps in the disability analysis.

On these facts, the Court of Appeals remanded the case for further consideration by the Commissioner and provided guidance regarding the duty of articulation required from ALJs in this setting. Thus, the Court of Appeals explained that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504. While imposing this responsibility of articulation upon ALJs, the appellate court did not endeavor to impose some strict formulaic requirements upon these administrative adjudicators. Quite the contrary, the Court made it clear that "[t]he ALJ, of course, need not employ particular 'magic' words: '[Case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.' " Diaz, 577 F.3d at 504 (citations omitted).

The Court of Appeals also made it abundantly clear that its decision related to the ALJ's duty to adequately articulate the rationale underlying any decision denying benefits and did not in any way alter the very deferential substantive standard of review in these cases. As the Court noted,

> Were there *any* discussion of the combined effect of [obesity upon] Diaz's impairments, we might agree with the District Court [and affirm the ALJ decision]. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function.

Diaz, 577 F.3d at 504 (emphasis in original). By noting that "*any* discussion of the combined effect of [obesity upon] Diaz's impairments" would have been sufficient, the appellate court underscored the continuing vitality of the deferential standard of review that applies in these cases.

Thus, fairly construed, Diaz holds that where an ALJ has defined a claimant's obesity as a severe impairment at Step 2 of this analysis, there is a basic duty of articulation that is owed the claimant, explaining how that obesity affects the issue of disability. However, once that duty of articulation is met, the substantive standard of review remains highly deferential. Applying this analytical paradigm, following Diaz it has been held that a single cursory assurance that an ALJ has considered a claimant's obesity may be insufficient to satisfy the requirement that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504; see also Sutherland v. Berryhill, No. 3:17-CV-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), report and recommendation adopted sub nom. Sutherland v. Berryhill, No. CV 3:17-0124, 2018 WL 2183359 (M.D. Pa. May 11, 2018). However, a statement by an ALJ in a decision denying benefits that the ALJ has "considered any additional and cumulative effects of obesity," when coupled with even a brief factual analysis of the medical evidence as it relates to obesity and impairment is sufficient to satisfy

this duty of articulation. <u>Cooper v. Comm'r of Soc. Sec.</u>, 563 F. App'x 904, 911 (3d Cir. 2014). Further, when an ALJ considers the role of a claimant's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines, this duty is satisfied. <u>Woodson v. Comm'r Soc. Sec.</u>, 661 F. App'x 762, 765 (3d Cir. 2016). Finally, this responsibility is met when the ALJ explicitly considers the claimant's obesity when assessing that claimant's residual functional capacity. <u>Hoyman v. Colvin</u>, 606 F. App'x 678, 680 (3d Cir. 2015). <u>Medina v. Berryhill</u>, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), <u>report and recommendation adopted,</u> No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018).

### D.   <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

In this case, Wilder filed his second application for disability benefits in August of 2017, shortly after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. The regulations that pre-dated March of 2017 also set standards for the evaluation of medical evidence and defined medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairments, including [the plaintiff's] symptoms,

diagnosis and prognosis, what [he or she] can still do despite impairments, and [the plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Regardless of its source, the ALJ was required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ was guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide[d] progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources had the closest ties to the claimant, and therefore their opinions were generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions

that ALJs were enjoined to consider were broadened substantially and the approach
to evaluating opinions was changed from a hierarchical form of review to a more
holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been
> amended for claims filed after March 27, 2017, and several of the prior
> Social Security Rulings, including SSR 96-2p, have been rescinded.
> According to the new regulations, the Commissioner "will no longer
> give any specific evidentiary weight to medical opinions; this includes
> giving controlling weight to any medical opinion." Revisions to Rules
> Regarding the Evaluation of Medical Evidence ("Revisions to Rules"),
> 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see
> 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner
> must consider all medical opinions and "evaluate their persuasiveness"
> based on the following five factors: supportability; consistency;
> relationship with the claimant; specialization; and "other factors." 20
> C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

> Although the new regulations eliminate the perceived hierarchy of
> medical sources, deference to specific medical opinions, and assigning
> "weight" to a medical opinion, the ALJ must still "articulate how [he
> or she] considered the medical opinions" and "how persuasive [he or
> she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and
> (b)(1), 416.920c(a) and (b)(1). The two "most important factors for
> determining the persuasiveness of medical opinions are consistency and
> supportability," which are the "same factors" that formed the
> foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg.
> 5844-01 at 5853.

> An ALJ is specifically required to "explain how [he or she] considered
> the supportability and consistency factors" for a medical opinion. 20
> C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to
> "supportability," the new regulations provide that "[t]he more relevant
> the objective medical evidence and supporting explanations presented
> by a medical source are to support his or her medical opinion(s) or prior
> administrative medical finding(s), the more persuasive the medical
> opinions or prior administrative medical finding(s) will be." Id. at §§
> 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with

respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate contrasting medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and

the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

It is against these benchmarks that we assess the instant social security appeal.

### E.      The ALJ's Decision in this Case Will Be Affirmed.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence," Pierce, 487 U.S. at 565, but rather "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek, 139 S. Ct. at 1154. Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision that Wilder was not entirely disabled.

The evidence that supported the denial of this claim included the majority of the medical opinions in this case, namely the opinions of Drs. Brown, Wolfe, and Richards, all of whom found that Wilder could perform work with some limitations. Further, the clinical records in this case simply did not reflect a wholly disabling degree of impairment from Wilder's obesity and MS. Moreover, Wilder's self-

reported activities of daily living also indicated that the plaintiff retained some capacity to work at this time.

As for Wilder's allegations that the ALJ erred by failing to give the treating source opinion of Ms. Conner-Mertz greater weight, we find that this opinion, and the competing views of Drs. Brown, Wolfe, and Richards, were all appropriately weighed by the ALJ under the current prevailing paradigm for analysis of medical opinions, which requires the ALJ to identify the persuasiveness of these opinions, and explicitly address their supportability and consistency. Here, as the ALJ explained, the views expressed by Drs. Brown, Wolfe, and Richards were consistent with one another and were supported by the treatment records for Wilder. Further, these opinions were congruent with Wilder's self-reported activities of daily living. Therefore, substantial evidence supported the ALJ's findings that these opinions had greater persuasiveness than the more extreme and limited view expressed by Ms. Conner-Mertz.  Under the current prevailing standards governing assessment of medical experts, there was no error here.

Moreover, substantial evidence supported the ALJ's analysis of Wilder's severe impairments, his obesity, and MS. As for the MS diagnosis, the ALJ's conclusion that this condition was not presently disabling was supported by the clinical records, Wilder's reported activities of daily living, and the greater number of persuasive medical opinions, all of which supported a finding that the plaintiff

was not totally disabled due to his MS. Indeed, in similar circumstances, courts have affirmed decisions by ALJs denying Social Security applications based upon an MS diagnosis where the medical records and expert opinions did not support a claim of total disability due to this medical condition. See Seney v. Comm'r Soc. Sec., 585 F. App'x 805, 809 (3d Cir. 2014).

Likewise, the ALJ's evaluation of Wilder's obesity fully complied with the dictates of the law. In this regard, the ALJ correctly concluded that Wilder's obesity was a severe impairment at Step 2 of this sequential analysis. The ALJ then expressly considered this obesity throughout the disability sequential analysis, addressing his obesity at Step 3 and discussing this obesity when framing an RFC for Wilder. In our view, this analysis met the minimal burden of articulation demanded by the courts. It considered the role of Wilder's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines; Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 765 (3d Cir. 2016), and considered his obesity when assessing Wilder's residual functional capacity. Hoyman v. Colvin, 606 F. App'x 678, 680 (3d Cir. 2015). This decision also satisfied the ALJ's duty of articulation by combining an assurance that the ALJ has considered the cumulative effects of obesity in this analysis with a factual discussion of the medical evidence as it relates to both to Wilder's obesity and his medical impairments. Cooper, 563 F. App'x at 911. Moreover, substantial evidence supported the findings made by the ALJ with

respect to Wilder's obesity and his ability to perform a limited range of light or sedentary work notwithstanding these impairments.

Finally, we conclude that a remand is not required in the case due to any alleged Step 2 error by the ALJ in considering the severity of Wilder's depression, anxiety, vertigo or nerve pain. Our consideration of this claim is guided by familiar legal principles. Initially:

> At step-two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a 'slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities. McCrea v. Comm'r of Soc. Sec., 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a de minimis screening device used to cast out meritless claims. McCrea, 370 F.3d at 360; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. Bowen, 482 U.S. at 146, 107 S.Ct. 2287.

Stancavage v. Saul, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

Further:

> [I]t is well-settled that: "[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." Naomi Rodriguez v. Berryhill, No. 1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019)(citing cases).

Id. at 332.

While the ALJ did not find any of these conditions to be severe impairments at Step 2, there was a relative paucity of proof concerning the degree to which these conditions significantly limited Wilder's ability to do basic work activities. Indeed, Wilder's medical records contain few descriptions of vertigo, and while Wilder acknowledged nerve pain, his treatment records did not indicate that he was significantly impaired by that pain. Similarly, while Wilder underwent a brief period of counseling for anxiety, Dr. Richards' comprehensive mental health assessment found that he suffered from no severe mental impairments.

In any event, the ALJ expressly discussed Wilder's nerve pain and mental health when formulating the RFC for Wilder, and when conducting the Step 4 analysis in this case. (Tr. 18, 21). Therefore, to the degree that the ALJ's Step 2 consideration of any of these conditions was arguably insufficient, this alleged error was harmless given the ALJ's continued examination of these conditions throughout the sequential decision-making process. Stancavage, 469 F. Supp. 3d at 332.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this

ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

September 9, 2021